IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 07-73-SLR |
| CHRISTOPHER WATERMAN, | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE AND STATEMENTS**

Defendant, Christopher Waterman, by and through his undersigned counsel, Edson A. Bostic, Federal Public Defender for the District of Delaware, hereby moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fourth and Fifth Amendments of the United States Constitution, for an Order suppressing the Government's use of any and all evidence obtained as a result of Mr. Waterman's unlawful arrest on or about May 12, 2007, including any and all statements made during, or subsequent to, the unlawful arrest.

In support thereof, Mr. Waterman submits as follows:[1]

1. On or about May 12, 2007, Wilmington Police Officers received an anonymous call stating that a black male wearing black clothing and a black hat was standing on a porch at 1009 W. 7th Street, Wilmington Delaware, with a gun in his waistband area.

---

[1] The facts contained in paragraphs 1-12 of this motion were taken from the Discovery. Mr. Waterman cites these facts in his motion, but does not concede that the events transpired as stated by the arresting officers. Additionally, Mr. Waterman notes that the discovery, which has been redacted, may contain additional information not included in this motion. Mr. Waterman submits that an evidentiary hearing is needed to further develop the facts, which are determinative of this motion.

2. The police officers arrived at the scene and turned on a spotlight that illuminated the residence's porch and house number. The officers saw two African-American females and three African-American males standing on the porch. Mr. Waterman, who was one of the individuals, wore a black baseball hat, black shirt and dark-colored jeans.

3. The officers exited their vehicles, and asked to see the individuals' hands. According to officers, Mr. Waterman was the only individual who did not comply with this request.

4. The officers removed their guns and repeated their verbal command to Mr. Waterman, who allegedly had both hands in his pants pocket. On the officers' third command, Mr. Waterman removed his hands and immediately placed them on his waistband area. Mr. Waterman allegedly took one hand away from his waistband area and grabbed at the front door of the residence, which appeared to be locked.

5. According to the discovery, a female witness opened the door, and Mr. Waterman immediately placed both hands into his waistband and ran into the house. One of the officers allegedly saw Mr. Waterman run through the living room toward the back of the house, and heard someone yell, "[p]ut those fucking guns away. I have kids in there."

6. Although the facts are not clear from the discovery, the officers allegedly told the individuals standing on the porch to move away from the door. One of these individuals, however, grabbed the door and attempted to close the front door, but an officer "kicked the door open so [the officers] could have a clear line of sight into the residence." At that time, the officers allegedly saw Mr. Waterman walking away from the television with his hands in the air, and ordered him to come out of the residence. Mr. Waterman complied, and the officers took him into custody.

7. Sgt. Morrisey arrived at the scene and told an unidentified individual about the anonymous call. According to the discovery, all of the witnesses stated that there was no gun in the house because small children were inside the residence.

8. Although the facts are not clear from the discovery, an individual residing at the residence allegedly gave the officers permission to search the house for guns. After receiving consent, officers searched the home and allegedly found a loaded .32 caliber revolver in the kitchen.

9. Sgt. Misetic arrived on the scene and spoke to an unidentified individual, who allegedly told the officer about Mr. Waterman's prior gun and drug charges. The individual also allegedly gave Sgt. Misetic consent to search the house. Officers returned to the kitchen area and found crack cocaine.

10. Officers transported Mr. Waterman to turnkey for processing. During the transport, Mr. Waterman and the officers allegedly had the following exchange:

| | |
|---|---|
| **Mr. Waterman:** | I heard them talking about the FED UP Program. What is that about? |
| **Officer:** | It is in your best interest if you do not say anything. |
| **Mr. Waterman:** | "How can you charge me with a gun and the cocaine if it was not on me?" |
| **Officer:** | Who said anything about a gun and cocaine? |
| **Mr. Waterman:** | What are you charging me with? |

The officer allegedly did not respond to Mr. Waterman's question.

11. The officers searched Mr. Waterman's clothing and noticed that his belt was not buckled. The officers asked Mr. Waterman why his pants were not buckled, and he allegedly responded, "I had

3

to pee." The officers pointed out to Mr. Waterman that his pants were zipped and buttoned, and he allegedly responded, "[t]he belt is broken." The officers buckled Mr. Waterman's belt and took it into evidence. The officers also recovered $96.06 from Mr. Waterman's right front pocket.

12. The officers read Mr. Waterman's Miranda rights, which he allegedly waived. Mr. Waterman allegedly stated that the revolver belonged to "Mr. Waters," who had attempted to sell the revolver to Mr. Waterman. Mr. Waterman allegedly admitted to handling the revolver and having contact with it during the past few weeks. Officers asked Mr. Waterman why he ran into the house, and he allegedly responded that he ran because he knew he had outstanding warrants for his arrest.

13. On May 12, 2007, a Grand Jury for the District of Delaware indicted Mr. Waterman for knowingly possessing with the intent to distribute more than five grams of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(B), knowingly carrying and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and knowingly possessing a firearm that has been transported in interstate commerce to Delaware, in violation of 18 U.S.C. § 922(g)(1) and 924 (a)(2).

14. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." See U.S. CONST. Amend. IV. As the Supreme Court has noted, "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." Terry v. Ohio, 392 U.S. 1, 9 (1968) (citing Union Pacific Ry. Co. v. Botsford, 141 U.S. 250, 251 (1891)). The Fourth Amendment permits officers to conduct a brief, investigatory stop if

the officer has reasonable suspicion that "criminal activity may be afoot." Terry, 392 U.S. at 30.

15. In Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 567 (1971), the Supreme Court stated that if the "initial impetus" for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not be supported by the tip alone, if additional information acquired by the arresting officers corroborates the informer's tip that the arrestee committed the felony or was in the process of committing the felony."

16. Here, the officers failed to corroborate the anonymous tip and did not observe any suspicious behavior by Mr. Waterman or any of the other subjects on the porch. Thus, no reasonable suspicion existed to support an investigative stop, and the officers lacked probable cause for Mr. Waterman's arrest. See e.g., Robinson v. Clemons, 987 F.Supp. 280 (D.Del. 1998) (stating that a police officer must have probable cause to make an arrest), citing Terry, 392 U.S. at 20; Dunaway v. New York, 442 U.S. 200 (1979) ((stating that lengthy detentions beyond investigatory stops must be "based on consent or probable cause"), quoting United States v. Brignoni-Ponce, 422 U.S. 873, 881-82 (1975) ("Probable cause" means there are facts "sufficient to warrant a belief that the [suspect] has committed or is committing a crime . . . .")).

17. Because Mr. Waterman's seizure and arrest were illegal, all evidence, including any alleged statements taken from Mr. Waterman during, or subsequent to, his arrest, must be suppressed in accordance with the "fruit of the poisonous tree doctrine" expressed in Wong Sun v. United States, 371 U.S. 471 (1963).

18. Mr. Waterman also submits that any alleged statements made during, or subsequent to,

5

his illegal search and seizure should be suppressed pursuant to the Fifth Amendment and <u>Miranda v. Washington</u>, 384 U.S. 436, 444 (1966) (stating that a suspect subjected to custodial interrogation must be advised of his rights prior to making a statement).

19. "A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually, and reliably determined." <u>Jackson v. Denno</u>, 378 U.S. 368, 380 (1964). Once the defendant challenges the admissibility of an alleged statement, the Government bears the burden of establishing compliance with <u>Miranda</u> and its progeny, and must demonstrate that the suspect knowingly, intelligently and voluntarily waived his or her rights. <u>Id.</u> at 444.

20. Mr. Waterman reserves the right to file a Memorandum of Law in support of his Motion to Suppress Physical Evidence and Statements after the completion of a hearing in this matter.

**WHEREFORE**, Mr. Waterman respectfully requests that this Court conduct a hearing to further develop the facts related to this motion and enter an Order suppressing the Government's use of any and all physical evidence illegally seized from him on or about May 12, 2007, including all statements made during, or subsequent to, his unlawful seizure and arrest.

Respectfully submitted,

/s/ Edson A. Bostic
Edson A. Bostic, Esquire
Federal Public Defender

Tieffa N. Harper
Research & Writing Attorney

Attorneys for Christopher Waterman

Federal Public Defender's Office
First Federal Plaza, Suite 110
704 King Street
Wilmington, DE  19801
302-573-6010
ecf_de@msn.com

Dated: September 21, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-73-SLR |
| | : | |
| CHRISTOPHER WATERMAN, | : | |
| | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this \_\_\_\_ day of _____, 2007, upon consideration of the Defendant's Motion to Suppress Physical Evidence and Statements, and the Government's response thereto, it is hereby ORDERED that the Motion is GRANTED.

All physical evidence seized by law enforcement officials on May 12, 2007, and statements made by Defendant to law enforcement officials on May 12, 2007, are hereby **SUPPRESSED**. Such physical evidence and statements shall be inadmissible, for any purpose, by the Government.

**BY THE COURT:**

_____
Honorable Sue L. Robinson
United States District Court Judge