IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal Action No. 07-73-SLR |
| Plaintiff, : | |
| v. : | |
| : | |
| CHRISTOPHER WATERMAN, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S REQUEST TO DENY
THE DEFENDANT'S MOTION TO SUPPRESS**

The United States, by and through Colm F. Connolly, United State's Attorney for the District of Delaware, and Shawn E. Martyniak, Special Assistant United State's Attorney for the District of Delaware, hereby requests the Court to deny the Defendant's *Motion to Suppress Physical Evidence and Statements*.

**I. FACTUAL ALLEGATIONS.**

The Government submits the following factual allegations:

1. On May 12, 2007 at approximately 8:52PM, Wilmington Police Officers Ashe and Nowell responded to 1009 W. 7th Street, Wilmington, Delaware in reference to a concerned citizen complaint. An anonymous called reported that a black male, wearing black clothing and a black hat was standing on the porch of 1009 W. 7th Street. The caller reported that the individual had a firearm located in the waistband area of his pants.

2. The Officers responded to 1009 W. 7th Street and noticed five individuals standing on the porch of the residence. The Officers noted, of the individuals on the porch, two (2) were female and three (3) were male. Christopher Waterman, herein defendant, was found to be wearing a black baseball cap, a black t-shirt, and dark colored jeans. None of the other

individuals fit the description given by the anonymous caller.

3. The Officers requested that all of the individuals show the officers their hands. Four of the individuals complied. The defendant was the only individual that failed to comply to the Officer's request. The Officers removed their firearms from the holster and repeated the command. The defendant removed his hands from his pockets and placed both hands on the waistband area of his trousers. Due to their concern over the defendant's actions, the Officers then asked the defendant to place his hands in the air. The defendant removed one hand from his waistband and began grabbing at the front door; his other hand remained at the waistband.

4. The front door appeared to be locked as the defendant repeatedly attempted to open it. The defendant kept one hand on his waistband as he continued his attempt to open the door with his free hand. A female, later determined to be Deborah Waters, opened the door from the inside. The defendant placed both hands onto his waistband area and fled into the house. The officers gave commands for all of the individuals to step away from the front door. All of the individuals, except for Deborah Waters, complied.

5. As the Officers approached, Deborah Waters attempted to close the door. Officer Ashe saw the defendant retreat through the living room and into the kitchen area of house. The Officers were able to move Ms. Waters and gain access to the front door. Officer Nowell stuck his foot between the door and the door frame preventing Ms. Waters from closing it. Officer Nowell actions created a clear line of sight into the residence. As Officer Nowell opened the door, the Officers saw the defendant walking towards them, away from the kitchen area, with his hands in the air. The defendant then complied with the Officer's commands to come out of the house. The defendant was placed into custody.

6. The Officers explained to Deborah Waters the nature of the call they received. All of the individuals stated that no firearms were in the residence because there were small children in the residence. Sergeant Morrisey of the Wilmington Police Department spoke to Mr. Willie Waters. Mr. Waters claimed to live at 1009 W. 7th Street. Mr. Waters gave the Officers permission to search for a firearm.

7. The Officers responded to the kitchen which is located at the rear of the residence. A back door leading from the kitchen was checked and found to be locked. Sgt Morrisey responded to the kitchen and noticed two cases of soda on the floor. Between the cases of soda and the wall, Officer Morrisey located a .32 caliber silver revolver with a brown grip; the firearm was partially exposed and in plain view. The firearm was found stored inside of a black holster. The black holster had a belt-loop. The firearm was fully loaded with seven (7) rounds.

8. Sgt Misetic of the Wilmington Police Department explained to Deborah and Willie Waters that he would like to search the residence to ensure that no drugs were left behind. Willie Waters again consented to the search.

9. The Officers responded back to the area of the kitchen where the cases of soda were located. Officer Ashe located several plastic baggies near the cases of soda that the firearm was behind. The baggies contained various amounts of an off-white powdery substance. The substance later field tested positive for the presence of cocaine base and had a preliminary weight of approximately 11.5 grams.

10. The Officers interviewed individuals at the scene. Several of the individuals stated that the defendant was the only person that went into the kitchen.

11. As the defendant was in transit to the police station for processing, the defendant

stated, "I heard them talking about the FED UP program. What is this about?" The Officer responded that it was in the defendant's best interest to remain quiet. The defendant responded, "How can you charge me with a gun and cocaine if it was not on me?"

12. While in processing, Officer Ashe conducted a search of the defendant's clothing. The Officer noticed that the defendant's belt buckle was undone. When asked why his belt was undone, the defendant responded, "I had to pee." The Officer noted that the defendant's pants were buttoned and the zipper zipped. The defendant responded that the belt was broken. The Officer then checked the belt and was able to securely fasten the belt and the belt remained buckled.

13. Officer Ashe read the defendant his *Miranda* warnings. The defendant waived his *Miranda* protections and agreed to speak with Sergeant Misetic. Initially, the defendant denied any knowledge of the handgun and stated he ran inside because there were active warrants for his arrest. After a few minutes speaking with Sergeant Misetic, the defendant gave a different statement. The defendant stated that the firearm belonged to Mr. Waters. He further advised Mr. Waters was attempting to sell the defendant the firearm. The defendant stated that the firearm is a seven shot revolver with a brown handle. The defendant further advised that he had handled the firearm several times in few weeks prior to the arrest.

14. As a result of the stop and subsequent arrest, the defendant is charged with three separate violations of federal law: 1) Possession with intent to distribute more than five (5) grams of cocaine base (21 U.S.C. §§ 841(a)(1) and (b)(1)(B)); 2) Possession of firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)(1)(A)); and 3) Possession of a firearm by a prohibited person (18 U.S.C. §§ 922(g)(1) and 924(a)(2)).

14. The Government respectfully requests the Court deny the defendant's *Motion*. Additionally, if a hearing is held, the Government respectfully requests permission to respond to any additional briefing filed by defendant.

## II. LEGAL ARGUMENT.

### B. The defendant was not in custody until after he discarded the gun and drugs.

The defendant's motion should be denied as he was not "in custody" until after he discarded the gun and narcotics. The defendant's motion seems to based on the theory that the Wilmington Police Officers lacked reasonable suspicion to stop Mr. Watrman.[1] However, Mr. Waterman was not stopped, detained, or in custody prior to discarding the handgun and cocaine.

The United State's Supreme Court has made clear that in order to constitute a seizure of a person there must be either the application of physical force or submission, by the suspect, to the Officer's show of authority. *California v. Hodari D.*, 499 U.S. 621, 626-27 (1991). A show of authority by the police to which a subject does not yield is insufficient. *See id.* Moreover, if no physical force accompanies the show of authority, and an individual then chooses to ignore the show of authority, there is no seizure until the officer applies physical force or the individual submits to the show of authority. *See id.* at 624-627.

The Officers responded to the address as a result of an anonymous call and asked the individuals on the porch to show their hands. All of the individuals, except the defendant complied. Once he removed his hands from his pockets, the defendant refused the officers

---

[1] In paragraph sixteen of the defendant's motion he writes, "...no reasonable suspicion exists to support an investigative stop, and the officers lacked probable cause for Mr. Waterman's arrest.

5

commands and attempted to enter the residence. The defendant was ultimately successful in his attempts. The defendant then fled into the residence ignoring the officers commands. Moments later, the defendant emerged from the house with his hands in the air. At that point he was taken into custody. It is at this point that a determination for probable cause should begin.

The firearm and cocaine base were later discovered in the kitchen of the residence; no contraband was seized from the person of the defendant. Prior to obeying the authority and commands of the police, the defendant discarded the firearm and cocaine; the Officers did not violate the defendant's rights in recovering the abandoned property.

C. The defendant's rights were not violated when Officers seize abandoned property.

After the defendant hid the firearm and cocaine in the kitchen of the residence, the contraband became abandoned property. As abandoned property, the police were free to recover the contraband without violating any of the defendant's rights.

In *Abel v. U.S.*, the Supreme Court determined that warrant-less searches and seizures of abandoned property did not violate the Fourth Amendment. *Abel v. U.S.*, 362 U.S. 217 (1960). The Court wrote, "[t]here can be nothing unlawful in the Government's appropriation of . . . abandoned property." *Id.* at 241.

In the case at bar, the defendant fled from the police and into the residence at 1009 W. 7th Street. The defendant, moments later emerged from the house. The Officers then searched the residence pursuant to consent from a resident of the home. The Officers located a handgun and approximately 11.5 grams of cocaine base in the kitchen area of the home. Once the defendant discarded the contraband, the Officers were free to recover the items.

### III. CONCLUSION.

The Government respectfully submits that the defendant's motion should be denied. Prior to the discarding of the firearm and crack cocaine, the defendant never was physically apprehended nor did he acquiesce to the commands of the police. Furthermore, once the defendant discarded the firearm and cocaine, prior to being placed in custody, the contraband became abandoned property subject to recovery by police.

WHEREFORE, the United States respectfully asks the Court to deny the Defendant's *Motion* or, in the alternative, consider this the Government's pre-hearing response to the Defendant's *Motion*.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By: /s/ Shawn Martyniak
Shawn E. Martyniak (De. I.D. No. 4433)
Special Assistant United States Attorney
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, Delaware 19899-2046

Dated: November 21, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Criminal Action No. 07-73-SLR |
| CHRISTOPHER WATERMAN, | ) ) ) |
| Defendant. | ) ) ) |

**<u>ORDER</u>**

For the reasons stated in the Government's Motion dated November 21, 2007, IT IS HEREBY ORDERED that:

1. The defendant's Motion to Suppress Physical Evidence and Statements is DENIED.


Dated: _____

_____
Sue L. Robinson
UNITED STATES DISTRICT JUDGE